LAW OFFICES OF BRANDON A. BLOCK
A PROFESSIONAL CORPORATION
BRANDON A. BLOCK (State Bar No. 215888)
433 North Camden Drive, Suite 600
Beverly Hills, CA 90210
Telephone:   310.887.1440
Facsimile:   310.496.1420

Attorneys for Plaintiff
KENDRA L. WILLIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENDRA L. WILLIS, an individual,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CARFINANCE CAPITAL LLC, a Delaware limited liability company; DEL MAR RECOVERY SOLUTIONS, INC., a California corporation; CHAMPIONS RECOVERY SERVICES, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES FOR:**<br>**1. VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT;**<br>**2. VIOLATIONS OF CALIFORNIA'S ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT;**<br>**3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; AND**<br>**4. CONVERSION**<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT**

Plaintiff Kendra L. Willis complains against defendants CarFinance Capital LLC, Del Mar Recovery Services, Inc., Champions Recovery Services, Inc., and Does 1 through 10, inclusive, as follows:

**Jurisdiction, Venue and Intradistrict Assignment**

1. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692(k), and supplemental jurisdiction of the state law claims alleged herein pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this District in that it is a judicial district where defendant Champion Recovery resides, and all Defendants are residents of California. 28 U.S.C. § 1391(b)(1).

3. Assignment to the San Francisco and Oakland Division of this Court is appropriate under Local Rule 3-2 in that this action arises in Alameda County.

## Parties

4. Plaintiff is a natural person residing in San Joaquin County, California.

5. Defendant CarFinance is a Delaware limited liability company with its principal place of business in Irvine, California.

6. Defendant Del Mar Recovery is a California corporation with its principal place of business in Carlsbad, California. Del Mar Recovery is a "repossession agency" as defined in California Business and Professions Code § 7500.2.

7. Defendant Champions Recovery is a California corporation with its principal place of business in Livermore, California. Champions Recovery is a "repossession agency" as defined in California Business and Professions Code § 7500.2.

8. Plaintiff does not know the true names, identities, and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sues those defendants by fictitious names. Plaintiff will amend this Complaint to allege the true names, identities and capacities of defendants sued herein as Does 1 through 10, inclusive, when plaintiff discovers such information.

## Operative Facts

9. Pursuant to a Note and Security Agreement dated June 12, 2014, plaintiff obtained a loan from defendant CarFinance. Plaintiff's motor vehicle served as collateral for the loan.

10. On or about September 23, 2016, plaintiff made two payments by telephone to CarFinance totaling $1,364.59. During the call, CarFinance's

representative promised and assured plaintiff that, in light of her payments, plaintiff's motor vehicle would not be subject to repossession.

11. CarFinance nevertheless hired defendant Del Mar Recovery, a repossession agency, to conduct the nonjudicial ("self-help") repossession of plaintiff's vehicle. Del Mar Recovery hired and instructed defendant Champions Recovery, a repossession agency located closer to plaintiff's residence, to assist Del Mar Recovery in the repossession of plaintiff's vehicle.

12. At all times relevant, Del Mar Recovery, Champions Recovery and the Doe Defendants were independent contractors of CarFinance. At all times relevant, Champions Recovery and the Doe Defendants were agents and/or employees of Del Mar Recovery, and were acting within the course and scope of such agency or employment.

13. On or around September 27, 2016 at or around 1:30 a.m., plaintiff was awakened by Doe Defendant No. 1 pounding on the front door of plaintiff's residence. At the time, plaintiff was home with her two teenage daughters. Plaintiff's husband was at work. Plaintiff arose out of her bed and grabbed her cellphone. As plaintiff crept quietly into her hallway, Doe Defendant No. 1 intensified his pounding on the front door of plaintiff's residence, and began repeatedly ringing the doorbell.

14. Plaintiff's heart was racing. She was extremely fearful and nervous for the safety of herself and her daughters. Plaintiff called 911 and whispered to the police dispatcher that someone was pounding on the door of her residence and repeatedly ringing the doorbell. Plaintiff went downstairs with the 911 dispatcher on the phone. She asked for the identity of the person on the other side of the door, and why the person was pounding on the door and ringing the doorbell. Plaintiff also quietly peeked through her window and observed Doe Defendant No. 1, a large Caucasian man with many tattoos adorning his neck holding a large flashlight. Doe Defendant No. 1 saw plaintiff and glared at her through the window.

1    15.   Doe Defendant No. 1 began screaming that plaintiff had to open her door, and to give Doe Defendant No. 1 the keys to plaintiff's vehicle. The 911 dispatcher told plaintiff not to open the door, and plaintiff told Doe Defendant No. 1 that she was not opening her door. Doe Defendant No. 1 then began screaming, "Open the door and give me the god damned keys!"

16.   The 911 dispatcher repeated to plaintiff to not open the door. Doe Defendant No. 1 kept pounding on the front door to plaintiff's house and repeatedly ringing the doorbell. Plaintiff's daughters had been awakened by Doe Defendant No. 1's pounding, ringing and screaming. Plaintiff started to hear her daughters crying and yelling that their mom should move away from the door.

17.   Plaintiff looked out her window again, with the 911 dispatcher on the line. Plaintiff observed a flatbed truck at the end of her driveway and Doe Defendant No. 2, a Caucasian male, standing in front of the truck. Doe Defendant No. 1 kept up the constant ringing of her doorbell and began screaming, "Kendra! Open the door! Your ass better give me the keys!"

18.   Plaintiff described what she saw to the 911 dispatcher, who told plaintiff that it seemed there may be a repossession order on her vehicle. Plaintiff explained to the dispatcher that there could not be any repossession order on her vehicle, and that she had just spoken with CarFinance. Plaintiff asked Doe Defendant No. 1 through the window for the identity of his company. Doe Defendant No. 1 told plaintiff that he did not need to identify himself or his company.

19.   The 911 dispatcher told plaintiff that the cops were on their way. Plaintiff told that to Doe Defendant No. 1, who again demanded that plaintiff give him the keys to plaintiff's vehicle. When plaintiff refused, Doe Defendant No. 2 instructed Doe Defendant No. 1, "Just go into her house and get them." Doe Defendant No. 1 then began jiggling the knob to the front door of plaintiff's house, trying to get in. Plaintiff's fear intensified to a nearly unbearable level.

4
COMPLAINT

20. Plaintiff ran upstairs, to try to protect and console her daughters. Petrified, they all hid in the closet. Plaintiff looked out the closet window and observed her vehicle still on her driveway, not yet affixed to or loaded onto Defendants' flatbed truck.

21. After approximately 20 terrifying minutes, the police arrived at plaintiff's house. Plaintiff and her daughters were still in the closet. Plaintiff's daughters were crying hysterically for almost the entire time waiting for the police. Plaintiff observed Doe Defendants Nos. 1 and 2 talking to the police. After several minutes, one of the officers came to the door and told plaintiff that defendants had a repossession order for plaintiff's vehicle, although plaintiff was never shown one. The officer told plaintiff that he was assured by Doe Defendants Nos. 1 and 2 that they would finish loading plaintiff's vehicle on the flatbed truck and leave without further harm to plaintiff. Instead, after the police left, Doe Defendants Nos. 1 and 2 continued to yell and verbally taunt plaintiff while they loaded her car onto their truck. Plaintiff and her daughters spent the rest of the night in terror, unable to sleep.

22. Later that morning when CarFinance opened, plaintiff contacted it and spoke with a male who identified himself as Chris Yulin and an operations supervisor for CarFinance. Mr. Yulin admitted and confirmed to plaintiff that there should not have been a repossession of her vehicle. Mr. Yulin then transferred plaintiff to a female who identified herself as Stephanie and an employee in CarFinance's Reinstatement Department. Stephanie also admitted and confirmed to plaintiff that there should not have been a repossession of her vehicle. Stephanie promised and assured plaintiff that her vehicle would be immediately located and returned to her. Defendants, however, did not return plaintiff's vehicle until later in the day on September 27, 2016. By then, plaintiff had missed a work appointment. Adding to plaintiff's injury, defendants retained and have refused to return plaintiff's portable projector and screen that was taken with her vehicle during the unlawful repossession.

23. Plaintiff has suffered tremendous harm as a direct and proximate result of defendants' conduct. Plaintiff lost the use of her vehicle and personal property in vehicle. Moreover, plaintiff has suffered and continues to suffer extreme emotional distress and tremendous fear for the safety of herself and her children. Plaintiff's husband works evenings, and she feels like a "sitting duck", continually scared that defendants will return to cause further harm to her and/or her family. Plaintiff's children still refuse to sleep in their own rooms, and plaintiff has been forced to purchase a firearm to protect herself and her family from defendants, should they return to cause her further harm.

**First Claim for Relief – Violations of The Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq.**

**(By Plaintiff Against Del Mar Recovery, Champions Recovery and Doe Defendants Nos. 1 through 10)**

24. Plaintiff realleges and incorporates herein by reference each and every paragraph set forth above.

25. Congress has found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," and that "[a]busive debt collectors contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Thus, Congress enacted the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. ("FDCPA"), to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Id., § 1692(e).

26. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3) in that she is a natural person obligated or allegedly obligated to pay a "debt".

27. Defendants are "debt collectors" within the meaning of 15 U.S.C.

§ 1692a(6) in that they are persons who use an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the enforcement of security interests.

28. The purported debt which defendants attempted to collect from plaintiff is a "debt" within the meaning of 15 U.S.C. § 1692a(5). Defendants sought to enforce a security interest related to plaintiff's obligation or alleged obligation to pay money to CarFinance, arising out of a transaction in which the property which was the subject of the transaction (plaintiff's vehicle) was primarily for personal, family or household purposes.

29. 15 U.S.C. § 1692f(6)(A) provides as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]

30. Defendants did not have a "present right" to possession of plaintiff's vehicle if there was breach of the peace. See Cal. Comm. Code § 9609(b). Defendants committed a breach of the peace by engaging in the conduct alleged herein. Defendants violated § 1692f(6)(A) by thereafter taking and threatening to take nonjudicial actions to effect the repossession of plaintiff's vehicle without a present right to possession of the vehicle, due to the breach of the peace.

31. As a direct and proximate result of defendants' violations of the FDCPA, plaintiff has been damaged in amounts which are subject to proof.

32. Plaintiff is entitled to recover her actual damages pursuant to 15 U.S.C. § 1692k(a)(1).

33. Plaintiff is entitled to recover statutory damages pursuant to 15 U.S.C.

§ 1692k(a)(2)(A).

34. Plaintiff is entitled to recover her attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

WHEREFORE, plaintiff prays for relief as set forth below.

## Second Claim for Relief – Violations of California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, et seq.

**(By Plaintiff Against Del Mar Recovery, Champions Recovery and Doe Defendants Nos. 1 through 10)**

35. Plaintiff realleges and incorporates herein by reference each and every paragraph set forth above.

36. The California Legislature has found that "unfair or deceptive debt collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers." Cal. Civ. Code § 1788.1(a)(2). The Legislature thus enacted California's Rosenthal Fair Debt Collection Practices Act, Civ. Code §§ 1788, et seq. ("Rosenthal FDCPA"), to ensure the integrity of California's banking and credit industry. Id., § 1788.1(b).

37. Plaintiff is a "debtor" within the meaning of Civil Code § 1788.2(h) in that he is a natural person from whom defendants sought to collect a "consumer debt" within the meaning of Civil Code § 1788.2(f) – *i.e.*, money, property or their equivalent which was alleged to be due and owing to CarFinance, by reason of a consumer credit transaction entered into with plaintiff.

38. At all times relevant, Defendants were "debt collectors" within the meaning of Civil Code § 1788.2(c), in that they regularly and in the ordinary course of business, on behalf of themselves or others, engage in acts and practices in connection with the collection of money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another natural person.

39. Defendants violated the provisions of Civil Code § 1788.10(a) by using,

1  or threatening to use, physical force or violence or any criminal means to cause harm
2  to the person, or the reputation, or the property of any person.
3     40.   Defendants violated the provisions of Civil Code § 1788.11(a) by using
4  obscene or profane language in connection with the collection or attempted
5  collection of a consumer debt.
6     41.   Civil Code § 1788.17 provides that "every debt collector collecting or
7  attempting to collect a consumer debt shall comply with the provisions of Sections
8  1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k
9  of, Title 15 of the United States Code."
10    42.   Defendants violated the provisions of 15 U.S.C. § 1692d(1) by using or
11 threatening to use violence or other criminal means to harm the physical person,
12 reputation, or property of any person. By violating the provisions of § 1692d(1),
13 defendants violated the Rosenthal FDCPA, at Civil Code § 1788.17, and plaintiff is
14 entitled to the remedies set forth in 15 U.S.C. § 1692k.
15    43.   Defendants violated the provisions of 15 U.S.C. § 1692d(2) by using
16 obscene or profane language or language the natural consequence of which is to
17 abuse the hearer or reader. By violating the provisions of § 1692d(2), defendants
18 violated the Rosenthal FDCPA, at Civil Code § 1788.17, and plaintiff is entitled to
19 the remedies set forth in 15 U.S.C. § 1692k.
20    44.   By violating the provisions of § 1692f(6)(A), defendants violated the
21 Rosenthal FDCPA, at Civil Code § 1788.17, and plaintiff is entitled to the remedies
22 set forth in 15 U.S.C. § 1692k.
23    45.   As a direct and proximate result of defendants' violations of the
24 Rosenthal FDCPA, Plaintiff has been damaged in amounts that are subject to proof.
25    46.   Plaintiff is entitled to recover her actual damages pursuant to Civil Code
26 § 1788.17, incorporating by reference 15 U.S.C. § 1692k(a)(1), or in the alternative,
27 Civil Code § 1788.30(a).
28    47.   Defendants' violations of the Rosenthal FDCPA were willful and

9
COMPLAINT

knowing. Plaintiff is entitled to recover statutory damages pursuant to Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692k(a)(2)(A), or in the alternative, Civil Code § 1788.30(b).

48. Plaintiff is entitled to recover her attorney's fees and costs pursuant to Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692k(a)(3), or in the alternative, Civil Code § 1788.30(c).

WHEREFORE, plaintiff prays for relief as set forth below.

**Third Claim for Relief – Violations of California's Rosenthal FDCPA**

**(By Plaintiff Against CarFinance and Doe Defendants Nos. 1 through 10)**

49. Plaintiff realleges and incorporates herein by reference each and every paragraph set forth above.

50. At all times relevant, defendants were "debt collectors" within the meaning of Civil Code § 1788.2(c), in that they regularly and in the ordinary course of business, on behalf of themselves or others, engage in acts and practices in connection with the collection of money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another natural person.

51. As alleged herein, defendants did not have a "present right" to possession of plaintiff's vehicle at the time of the unlawful repossession. Defendants violated § 1692f(6)(A) by nevertheless taking and threatening to take nonjudicial actions to effect the repossession of plaintiff's vehicle without a present right to possession of the vehicle. By violating the provisions of § 1692f(6)(A), defendants violated the Rosenthal FDCPA, at Civil Code § 1788.17, and plaintiff is entitled to the remedies set forth in 15 U.S.C. § 1692k.

52. As a direct and proximate result of Defendants' violations of the Rosenthal FDCPA, plaintiff has been damaged in amounts that are subject to proof.

53. Plaintiff is entitled to recover her actual damages pursuant to Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692k(a)(1), or in the alternative, Civil Code § 1788.30(a).

54. Defendants' violations of the Rosenthal FDCPA were willful and knowing. Plaintiff is entitled to recover statutory damages pursuant to Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692k(a)(2)(A), or in the alternative, Civil Code § 1788.30(b).

55. Plaintiff is entitled to recover her attorney's fees and costs pursuant to Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692k(a)(3), or in the alternative, Civil Code § 1788.30(c).

WHEREFORE, plaintiff prays for relief as set forth below.

**Fourth Claim for Relief – Intentional Infliction of Emotional Distress**

**(By Plaintiff Against Del Mar Recovery, Champions Recovery and Doe Defendants Nos. 1 through 10)**

56. Plaintiff realleges and incorporates herein by reference each and every paragraph set forth above.

57. Defendants engaged in the extreme, outrageous and unreasonable acts enumerated above to collect money and/or property from plaintiff. These acts went beyond the bounds of decency expected in a civilized society.

58. Defendants intended to cause plaintiff to suffer emotional distress, and/or engaged in their outrageous conduct with reckless disregard of the probability of causing plaintiff to suffer emotional distress.

59. As a direct and proximate result of defendants' conduct, plaintiff has suffered extreme and severe mental distress, mental suffering, and/or mental anguish, including one or more of the following: anxiety, fear, fright, humiliation, embarrassment, shame, nervousness, grief, worry, indignity, irritability, depression, anger, panic, nervousness, crying fits, loss of appetite, sensitive stomach, loss of sleep, nightmares, loss of concentration and headaches.

60. As a direct and proximate result of defendants' conduct, plaintiff has suffered damages in an amount to be determined according to proof.

61.     Defendants acted with oppression, fraud or malice, within the meaning of California Civil Code § 3294, thereby entitling plaintiff to punitive damages in an amount according to proof. Defendants' corporate officers, directors, or managing agents are personally guilty of oppression, fraud or malice, had advance knowledge of the unfitness of the employees who acted towards plaintiff with malice, oppression, or fraud, employed such employees with conscious disregard for the rights or safety of others, and/or themselves authorized or ratified the wrongful conduct.

WHEREFORE, plaintiff prays for relief as set forth below.

## Fourth Claim for Relief – Conversion

## (By Plaintiff Against All Defendants)

62.     Plaintiff realleges and incorporates herein by reference the allegations of all paragraphs above.

63.     Plaintiff was entitled to immediate possession of her vehicle and the personal property therein when plaintiff's vehicle was repossessed by defendants.

64.     Defendants wrongfully deprived plaintiff of possession of her vehicle and the personal property therein by repossessing it without any present right to do so.

65.     As a direct and proximate result of defendants' conduct, plaintiff has suffered damages in an amount to be determined according to proof.

66.     Defendants Del Mar Recovery, Champions Recovery and Doe Defendants Nos. 1 through 5 acted with oppression, fraud or malice, within the meaning of California Civil Code § 3294, thereby entitling plaintiff to punitive damages in an amount according to proof. Defendants' corporate officers, directors, or managing agents are personally guilty of oppression, fraud or malice, had advance knowledge of the unfitness of the employees who acted towards plaintiff with malice, oppression, or fraud, employed such employees with conscious disregard for

the rights or safety of others, and/or themselves authorized or ratified the wrongful conduct.

WHEREFORE, plaintiff prays for relief as set forth below.

### Prayer for Relief

WHEREFORE, plaintiff prays for the following relief:

1. For actual damages according to proof;
2. For statutory damages to the extent permitted by law;
3. For punitive damages to the extent permitted by law;
4. For pre-judgment interest to the extent permitted by law;
5. For an award of her attorney's fees, costs and expenses incurred in the investigation, filing and prosecution of this action; and
6. For such other and further relief as the Court may deem just and proper.

### Demand for Jury Trial

Plaintiff hereby demands a trial by jury under the United States Constitution.

Dated: November 15, 2016              Respectfully submitted,

                                      LAW OFFICES OF BRANDON A. BLOCK
                                      A PROFESSIONAL CORPORATION


                                      By:   /s/
                                            Brandon Block

                                      Attorneys for Plaintiff
                                      KENDRA L. WILLIS